UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JUAN SALINAS BAUTISTA, a/k/a Jose Morales-Victoria,
CEDRIC BARQUET,
JERMAINE E. SATTERWHITE,
JODIE TAYLOR,

    Defendants.

NO. CR08-82RSL

ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS

## I. INTRODUCTION

This matter comes before the Court on "Defendant Barquet's Motion to Suppress Search of Wire Communications and Request for Franks Hearing," Dkt. #466, "Defendant Barquet's Second Motion to Suppress Search of Wire Communications and Request for Franks Hearing," Dkt. #468,[1] and "Defendant Barquet's Motion to Suppress Search of Vehicle and Request for Franks Hearing," Dkt. #467. Defendant contends that, in seeking the wiretap orders, the government failed to provide "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous," 18 U.S.C. § 2518(1)(c). Defendant further contends

---

[1] Defendant Salinas Bautista joins in defendant Barquet's two motions to suppress the search of wire communications. Dkt. #469.

ORDER DENYING DEFENDANT'S
MOTIONS TO SUPPRESS - 1

that affidavits in support of the wiretap orders and search warrant include materially false information that was knowingly and intentionally included, or that was included with reckless disregard for the truth, and that they omit material information. The Court heard oral argument on April 28, 2009. For the reasons set forth below, the Court denies defendant's motions.

## II. DISCUSSION

### A. Background

This case arises out of a long-term investigation into a large-scale drug trafficking organization run by Shawn Piper and his wife Nicola Kilcup. The investigation has yielded indictments against fifteen defendants in all.

As part of the investigation into the conspiracy, the government applied for and received an order authorizing the interception of Piper's cell phone on January 22, 2008. On February 22, 2008, the government sought and received authorization to continue intercepting Piper's cell phone calls for another thirty days and to begin intercepting Kilcup's cell phone calls.

The investigation concluded on or about March 20, 2008, with the execution of coordinated search warrants and arrest warrants. One of the search warrants was for defendant Barquet's suspected residence at 8816 9th Avenue SW, Apt. #7, in Seattle, Washington. Based on that search, federal agents determined there was probable cause to seize a Volvo vehicle that was parked outside defendant Barquet's apartment. The officers secured the vehicle and transported it to a federal facility pending an application for a search warrant, which was issued the following day. Agents eventually found a small baggie of crack cocaine in the vehicle along with documents bearing defendant Barquet's name.

### B. Analysis

#### 1. Necessity

An authorization for a court-authorized wiretap must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. §

2518(1)(c). It must also recite facts indicating that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." Id. § 2518(3)(c). "This necessity requirement means that the affidavit must set out a factual background that shows that ordinary investigative procedures, employed in good faith, would likely be ineffective in the particular case." United States v. Brone, 792 F.2d 1504, 1506 (9th Cir. 1986). The Ninth Circuit has held that while "the wiretap should not ordinarily be the initial step in the investigation, . . . law enforcement officials need not exhaust every conceivable alternative before obtaining a wiretap." United States v. McGuire, 307 F.3d 1192, 1196-97 (9th Cir. 2002).

The Court finds that the issuing judge did not abuse his discretion, see id. at 1197, in finding that the affidavit in support of the initial wiretap met the statutory requirement of necessity. Agent David Korn of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") in Seattle submitted a 49-page affidavit detailing the use and limitations of normal investigative techniques. For instance the affidavit explained that the pen registers and trap and trace information they obtained "do not identify the parties to the conversations, cannot identify the nature or the substance of the conversations, and cannot differentiate between legitimate calls and calls for criminal purposes." Affidavit of David W. Korn ("Korn Affidavit"), Dkt. #478, Ex. A ¶ 117. See United States v. Commito, 918 F.2d 95, 97 (9th Cir. 1990). While the government did rely on confidential informants in its investigation, the affidavit explained that the primary informant was kept away by Piper from the other members of the conspiracy. Korn Affidavit ¶ 120. Nor was he able to "fully identify the manner in which this organization launders its narcotic proceeds." Id. Additionally, the use of physical and electronic surveillance yielded limited results, given the counter-surveillance measures employed by members of the organization, id. ¶ 126, the restricted field of view of the pole camera, id. ¶¶ 125, 133, and the fact that most of the drug transactions took place behind closed doors, id. ¶ 127.

The affidavit also addressed why other investigative techniques were not reasonably

ORDER DENYING DEFENDANT'S
MOTIONS TO SUPPRESS - 3

likely to succeed in this case. It explained that undercover officers were not employed because it was highly unlikely that they would be able to penetrate the "tightly-knit group of co-conspirators" that comprised Piper's "trusted circle." Id. ¶ 135. In addition, officers chose not to interview individual members of the organization so that they would not alert other members to the investigation. Id. ¶ 138.

Defendant contends that there are numerous methods of investigation which could have been pursued prior to requesting a wiretap. However, as noted above, the government need not pursue every possible technique before legitimately obtaining a wiretap order. See McGuire, 307 F.3d at 1197. Nor do defendant's speculations about other possible techniques suggest that the government has failed to make a showing of necessity. As the government explains in its brief, Dkt. #478 at 15, officers did not conduct additional surveillance on Piper's apartment because Piper moved out of the residence identified by the informant. Moreover, although the officers conducted six traffic stops, the traffic stops were only "fruitful in identifying individuals but were ineffective in determining whether they were involved in the drug conspiracy and, if so, what their role is in the conspiracy," Korn Affidavit ¶ 128. Defendant also speculates that the confidential informant had access to other members of the organization, Dkt. #466 at 9, but the affidavit provides sufficient information explaining why the use of informants was not successful in ascertaining the full scope of the conspiracy, Korn Affidavit ¶¶ 120-124.[2]

Defendant further contends that the affidavit provides nothing more than boilerplate statements rather than facts specific to this case. Dkt. #466 at 10 (citing United States v. Blackmon, 273 F.3d 1204, 1210 (9th Cir. 2001). But the Court finds that the affidavit contains

---

[2] At oral argument, the government further explained why it would have been both infeasible and unwise to either have the informant request access to lower level members of the organization when he already had a direct link to Piper or supply the informant with the names of suspected co-conspirators.

ORDER DENYING DEFENDANT'S
MOTIONS TO SUPPRESS - 4

sufficient specificity.³ Contrary to defendant's position, see Dkt. #466 at 5, the fact that the affidavit recites verbatim the statutory language does not suggest that the facts used to support a necessity determination are boilerplate; the Court can hardly fault Agent Korn for knowing the applicable standard and clearly delineating it before attempting to prove he has met that standard. Even if the Court were to agree with defendant that some statements expressed general conclusions, "[i]n light of the many assertions that are supported by specific probative facts, the few conclusory statements . . . do not render the affidavit - read in its entirety in a practical and commonsense fashion - invalid under § 2518(1)(c)," Commito, 918 F.2d at 98.

Finally, defendant argues that the government failed to use customary investigative techniques to obtain evidence against any participants other than Piper and Kilcup. Dkt. #484 at 2. While the phone records search and surveillance efforts centered on the leaders of the organization, they were utilized in order to determine the identity and role of the other members. The agents reasonably focused on the center of this network of criminal activity in order to build its case against the upstream and downstream participants. Defendant has not provided any caselaw suggesting that law enforcement is required to exhaust all investigative techniques with respect to each individual member of a conspiracy before it seeks a wiretap order. On the contrary, the Ninth Circuit has held that "the government is entitled to more leeway in its investigative methods when it pursues a conspiracy." McGuire, 307 F.3d at 1198; see id. ("[W]e have 'consistently upheld findings of necessity where traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to apprehension and

---

³ See Korn Affidavit ¶ 118 (telephone records were particularly unhelpful given that "some of the members of the Piper organization are either family members . . . or longtime associates"); id. ¶ 126 (explaining counter-surveillance methods); id. ¶ 131 (G.P.S. devices were likely to be detected because "Piper owns and deals out of an auto detail shop, where cars are washed and detailed on a daily basis"); id. ¶ 137 (the fact that "a number of Piper's associates have criminal histories for crimes of violence, including murder and manslaughter, . . . increases the likelihood that witnesses will not cooperate with investigators"); id. ¶¶ 142-143 (trash search was not utilized because "the trash can was located directly outside Shawn Piper's rear sliding glass door" at his previous apartment and "officers have not been able to identify any common or individual trash containers" at Piper's new town home complex).

ORDER DENYING DEFENDANT'S
MOTIONS TO SUPPRESS - 5

prosecution of . . . other satellite conspirators.'") (quoting United States v. Torres, 908 F.2d 1417, 1422 (9th Cir. 1990). The government need not engage in an inefficient, piecemeal approach when attempting to determine the full scope of a large-scale organization.

Defendant's second motion to suppress the search of wire communications, Dkt. #468, reiterates the contentions listed above, see id. at 5-6, and fails for the same reasons. Contrary to defendant's unsupported statement that the second affidavit "makes it clear that the government did not need any further information which could be obtained by way of wiretap," id. at 3, the affidavit fully explained that, as a result of the first wiretap, officers had identified Kilcup as a new target of the investigation, Second Affidavit of David W. Korn, Dkt. #478, Ex. B ¶ 114. Moreover, the affidavit stated that the officers still needed to identify several of Piper's co-conspirators, id. ¶ 115, as well as at least one cocaine supplier, id. ¶ 116. The Court finds that the second affidavit more than adequately detailed why the continued and extended use of wiretaps was necessary and why traditional investigative techniques would not suffice.[4]

### 2. Franks hearing

Defendant requests that the Court conduct a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Franks held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth amendment requires that a hearing be held at the defendant's request." 438 U.S. at 155-56. Franks set forth a rule of limited scope; a defendant is entitled to a Franks hearing "only if he makes a two-fold showing: intentional or reckless inclusion or omission, and materiality." United States v. Bennett, 219 F.3d 1117, 1124

---

[4] Defendant's second motion to suppress also alleges facial insufficiency, stating that the letter to the office of the United States Attorney in Seattle did not authorize the wiretapping of Kilcup's telephone. Dkt. #468 at 3. However, upon the government explanation that the wiretap order authorized the wiretapping of Kilcup's cell phone but not her text messages, Dkt. #478 at 8, defendant withdrew this claim at oral argument.

ORDER DENYING DEFENDANT'S
MOTIONS TO SUPPRESS - 6

(9th Cir. 2000). A false inclusion or an omission is considered material if the affidavit, purged of its defects, would not be sufficient to support a finding of probable cause or necessity. Id.

Defendant has failed to meet his burden in requesting a Franks hearing on his motions to suppress the wiretap information. Defendant contends that the omission of various facts regarding traffic stops and the inclusion of the targets' criminal histories is "misleading." See Dkt. #466 at 7. But this does not amount to a substantial showing of actual and deliberate falsity. See United States v. Prime, 431 F.3d 1147, 1150 n.1 (9th Cir. 2005). In his reply brief, defendant essentially concedes that he does not have enough information to support his allegations. See Dkt. #484 at 3 ("Of course, we had to speculate about that because we didn't have the information."); id. at 4 ("The defendants can only contend that this was done recklessly because we don't know whether it was done in order to wilfully hide this information from the Court."). "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." Franks, 438 U.S. at 171. Because there is a presumption of validity with respect to the affidavit supporting the search warrant, id., the affiant's statements are deemed trustworthy absent any information indicating otherwise. Defendant's "disbelief" regarding officers' intentions "does not amount to the substantial showing required under Franks." United States v. Meling, 47 F.3d 1546, 1554 (9th Cir. 1995). Defendant's suggestion that "[t]he government's memorandum makes it clear why a Franks hearing is essential in order for the Court to review [] the motions," Dkt. #484 at 3, ignores that it is *defendant's* burden to furnish "[a]ffidavits or sworn or otherwise reliable statements of witnesses" or explain their absence," Franks, 438 U.S. at 171; a hearing cannot be triggered by the face of the pleadings alone. See United States v. Chavez-Miranda, 306 F.3d 973, 979 (9th Cir. 2002) ("Chavez-Miranda offers no evidence . . . to support the claim that the omissions were reckless or intentionally misleading. This bare assertion falls short of the preponderance of the evidence that Franks requires.").

Defendant's presentation at oral argument also failed to make the substantial showing required by <u>Franks</u>. Although defendant argued that the affidavits could have included greater detail regarding why other investigative techniques were ineffective, he was unable to identify any statement in the affidavits that was untrue. To the extent the affidavits' relative lack of detail (when compared to the subsequent police reports) constitutes an omission, defendant has made no showing of materiality. The inclusion of more exhaustive explanations would have in no way called into question the ultimate necessity determination.

Defendant also seeks a <u>Franks</u> hearing on his motion to suppress the search of his vehicle, contending that the affidavit in support is "extremely misleading" and includes materially false information and recklessly omits material information. Dkt. #467 at 3. The Court disagrees. Defendant first argues that the affidavit's statement that "[a]ll of the controlled substances were found in the kitchen of Location 2, together with documents bearing Barquet's name" is materially false because the legal paperwork for defendant Barquet was actually found in the living room. <u>Id.</u> at 4. But as the government explains, "the majority of the seized drugs discovered in the apartment were found in the same drawer as an envelope addressed to Barquet." Dkt. #479 at 6. Thus, the statement contains no materially false or misleading information. Moreover, as noted above, the fact that the police report submitted after the search warrant application included greater detail than the affidavit does not necessarily mean that the affidavit omitted material information. Although the affidavit does not specifically mention that drugs were also found in other places throughout the residence, including in a jacket belonging to defendant's girlfriend M.B., the affidavit did make clear that M.B. was the lessee of the apartment and that she was present with defendant at the time of the search. Dkt. #479, Ex. E ¶ 13. Nor does M.B.'s potential culpability diminish the probable cause with respect to defendant.

Defendant also contends that paragraph 14 of the affidavit gives the false impression that agents had previously observed defendant Barquet drive the Volvo to a drug deal. But the paragraph says no such thing. After stating that Agent Korn had seen defendant Barquet driving

the Volvo on at least one prior occasion, the affidavit then proceeded to detail the events of that day:

> On March 4, 2008, Barquet and Kilcup met for a cocaine deal. After the deal, the surveillance team followed Barquet back to Location 2. Later that evening, Detective Brian Taylor saw the Volvo parked on the street in front of Location 2. A black male identified as Barquet got out of the car and went into apartment 7.

Id. ¶ 14. The affidavit notes that the Volvo was observed "[l]ater that evening," not during the cocaine deal. Even if a cursory reading of this paragraph leaves a mistaken impression, it is not material. If the affidavit had specifically stated that defendant was driving another car during the cocaine deal, probable cause would still have existed to search the Volvo.

### 3. Warrantless Seizure of Volvo

Finally, defendant contends that the seizure of the Volvo was improper because defendant had already been placed in custody and removed from the scene. Dkt. #467 at 5. However, because there was probable cause to believe that the vehicle contained contraband,[5] officers did not violate the Fourth Amendment in seizing the vehicle pending authorization to search it the following day. The mere fact that the officers could have obtained the warrant at an earlier time does not render the search or seizure invalid.

### III. CONCLUSION

For all of the foregoing reasons, "Defendant Barquet's Motion to Suppress Search of Wire Communications and Request for Franks Hearing" (Dkt. #466), "Defendant Barquet's Motion to Suppress Search of Vehicle and Request for Franks Hearing" (Dkt. #467), and "Defendant Barquet's Second Motion to Suppress Search of Wire Communications and Request for Franks Hearing" (Dkt. #468) are DENIED.

---

[5] See Colorado v. Bannister, 449 U.S. 1, 3 (1980); Maryland v. Dyson, 527 U.S. 465, 466 (1999) ("[U]nder our established precedent, the 'automobile exception' has no separate exigency requirement.")

DATED this 29th day of April, 2009.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANT'S
MOTIONS TO SUPPRESS - 10